

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NB/CC:PSS

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 26, 2014

By ECF

Honorable Arthur D. Spatt
United States District Court
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. David H. Brooks, 14 MC 209 (ADS)

Dear Judge Spatt:

      The government writes in connection with Judge Seybert's referral to Your Honor to resolve the question of whether David Brooks waived his rights to file a motion to recuse Judge Seybert in United States v. David H. Brooks, et al., 06 CR 550 (JS).  As set forth herein, the defendant has affirmatively waived his right to make a recusal motion.  The record reflects that on July 18, 2013, the government disclosed its investigation related to allegations that the defendant had threatened Judge Seybert and that the government ultimately did not credit those allegations.  Also on July 18, 2013, Judge Seybert inquired of counsel if Mr. Brooks wished to make a recusal motion based on the disclosed investigation.  Thereafter, the defendant spoke with his lawyers regarding the potential of recusal and his lawyers subsequently reported to the Court Brooks's intention to affirmatively waive his right to bring a recusal motion.  These facts are available in the existing record without a hearing and are set forth below.

      The defendant was indicted in 2007; years of pre-trial litigation ensued and the defendant was tried and ultimately convicted by a jury at a trial which took place in 2010.  Post-trial litigation consumed three more years and the defendant was ultimately sentenced at a three-day proceeding between August 7 and August 15, 2013.  Relevant to the issue of waiver before this Court, on or about November 6, 2012 this Office and the Federal Bureau of Investigation ("FBI") received information about a potential threat against Judge Seybert and others and promptly notified the Marshals.  While this Office and the FBI investigated the potential threat, the Marshals followed protocol and informed Judge Seybert of the potential threat.  On July 18, 2013, this Office publicly

1

filed a letter disclosing to the defendant and his team of 35 attorneys the alleged threat, the resulting investigation and the government's conclusion that it would not offer any evidence of the potential threats at sentencing (the "Government's July 18, 2013 Letter"). (Exhibit A). Within hours, Brooks's lawyers read the Government's July 18, 2013 Letter, contacted the government and wrote a letter in response to the government's disclosure ("Greenberg's July 18, 2013 Letter") (Exhibit B).

Later on July 18, 2013 Judge Seybert arranged a telephonic conference between the government and Brooks's lawyers Tai Park, Steven Yurowitz and Richard Greenberg to discuss the July 18, 2013 letters. (Transcript of July 18, 2013 Hearing ("Tr.")) (Exhibit C). At this hearing, the government agreed to supplement the record with a letter to reflect that the government did not credit the alleged threat. Tr. at 4. Then, Judge Seybert squarely asked the following question: "Mr. Greenberg and Mr. Park, should I be expecting any motion to recuse the Court?" Tr. at 9. Mr. Greenberg responded, "I certainly don't believe so, Your Honor, now the government has clarified it, I don't see why the Court should be affected by a baseless allegation." Tr. at 9-10. Nevertheless, Judge Seybert instructed, "Mr. Greenberg and Mr. Park, please let me know as soon as you know *after speaking to Mr. Brooks and Mr. Shargel*, whether any motion will be forthcoming so that I can appropriately respond to it. Other than that, I will see you folks on August 7" – a reference to the then-scheduled sentencing date. Tr. at 10 (emphasis supplied).

Following the July 18, 2013 hearing, several things happened. First, the government filed a second letter expressly stating that the "government has not identified corroboration of these allegations and does not credit them" (the "Government's Second July 18, 2013 Letter) (Exhibit D). Second, Mr. Park dispatched his associate, Eyal Dror, to visit Mr. Brooks at the Metropolitan Detention Center ("MDC") and bring Mr. Brooks some or all of the letters that had been filed that day. Attached as Exhibit E are records from the MDC reflecting the sign-in sheets that counsel used on the dates in question. (The government is not filing Exhibit E online, but will make copies available to the Court and the parties.) Third, Mr. Park went to the MDC himself on July 19, 2013, met with Mr. Brooks, discussed the potential of a recusal motion and learned from Mr. Brooks that he had no intention of moving to recuse or disqualify the Court. Mr. Park thereafter communicated his conversation to Mr. Greenberg, who memorialized these facts in a July 19, 2013 letter to Judge Seybert. (Exhibit F). Mr. Greenberg's July 19, 2013 letter stated, "Mr. Brooks has no intention of moving to recuse or disqualify the Court on the basis of the government's disclosure yesterday or an unsubstantiated and uncorroborated allegation of a threat of physical injury the government says 'it does not credit.'"

Relying on these representations, Judge Seybert proceeded to sentencing as scheduled on August 7, 2013. The defendant was in court at sentencing along with Messrs. Park, Yurowitz, Gustave Newman and Gerald Shargel. See United States v.

<u>David H. Brooks, et al.</u>, 06 CR 550 (JS), Docket Entry 1699.  For his part, Mr. Shargel was independently made aware of the government's investigation into the alleged threats on July 17, 2013; he also was a counsel of record who would have received the ECF bounces related to the July 18-19, 2013 correspondence.  Neither Brooks nor any of his counsel raised the issue of recusal.

Three months after sentencing, through his attorneys at the Dershowitz law firm, Brooks sought to compel the government to produce discovery regarding communications with Judge Seybert about the threat investigation in connection with an anticipated recusal motion.  (Exhibit G).  In response, the government responded that the defendant had waived his right to recuse Judge Seybert for the same reasons set forth herein.  (Exhibit H).  Thereafter, through a different lawyer, Brooks filed a recusal motion.  In connection with that recusal motion, Brooks submitted an affidavit, in which he essentially accused Tai Park of lying about his meeting with Brooks on July 19, 2013 and disavowed the representations made in Greenberg's July 19, 2013 letter that Brooks had considered and rejected the possibility of seeking recusal.  (Exhibit I).  Mr. Park, in turn, having been accused of lying, wrote to Judge Seybert to correct the record and affirmed that he fully stands by the statements made in Greenberg's July 19, 2013 Letter.  (Exhibit J).  Finally, the defendant filed a supplemental submission, attaching an affidavit from another one of his lawyers, Bryan Skarlatos, Esq., in an attempt to undermine his earlier waiver.  (Exhibit K).  It was in response to this most recent submission that Judge Seybert referred the question of Brooks's waiver to Your Honor.

<u>The Law</u>

As set forth above, Brooks affirmatively waived his right to bring a recusal motion.  Additionally, he waived his rights to bring this motion through his silence.  With no motion from the defendant following the July 18, 2013 disclosure, Judge Seybert sentenced the defendant in August 2013.  It was not until after this critical step of the criminal case and four more months passed that Brooks filed his recusal motion.  The meritless motion was filed too late.  The Second Circuit has ruled that timeliness is a "threshold" issue – that is, one to be evaluated before matters of substance a recusal motion are reached.  See <u>Apple v. Jewish Hospital and Medical Center</u>, 829 F.2d 326, 333 (2d Cir.1987).  In <u>United States v. Brinkworth</u>, 68 F.3d 633, 639-40 (2d Cir.1995), the Second Circuit held that one seeking disqualification must do so "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim" of disqualification.  Thus, "[u]ntimeliness ... is ... a failure to seek recusal when it should first have been sought, that is, as soon as the facts on which it is premised are known to the parties."  <u>United States v. Bayless</u>, 201 F.3d 116, 127 (2d Cir. 2000), <u>cert. denied</u>, 529 U.S. 1061, 120 S.Ct. 1571, 146 L.Ed.2d 474 (2000).  In deciding whether a recusal motion is timely, courts must "apply a four-factor test which asks whether: (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was

made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." Apple, 829 F.2d at 334 (citations omitted).  The reasons for this timeliness requirement are twofold:

> First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take.  Second, a prompt application avoids the risk that a party is holding back a recusal application as a fallback position in the event of adverse rulings on pending matters.
>
> In re IBM Corp., 45 F.3d 641, 643 (2d Cir.1995).

Analysis

The defendant's disavowal of his waiver is disingenuous and reflects an impermissible litigation strategy.  In July 2013 when the threat investigation was revealed, Judge Seybert knew that sentencing was scheduled for August 2013 and appropriately flagged the issue for the defense asking, "Should I anticipate a recusal motion?"  The defendant waived his right to seek recusal and asked the Court to proceed to the next step in the litigation:  sentencing and entry of judgment.  This decision is plainly reflected in Greenberg's July 19, 2013 Letter, but even without Mr. Park's account of the waiver reflected there, Brooks and his fleet of attorneys, who were all aware of the July 18-19, 2013 correspondence, never revisited the waiver or sought to withdraw Mr. Greenberg's letter.  Instead they forged forward to sentencing and entry of the judgment.  Not until November 2013 – three months after sentencing did the defendant revisit his decision, deploy a "fallback position" and seek additional discovery and a potential recusal motion.  Apart from accusing Tai Park of lying, the defendant offers no reason whatsoever for his failure to make the motion earlier.  The Second Circuit specifically limits a defendant's ability to play the system like this.

The record supplied in this submission should be sufficient for Your Honor to find that the defendant has affirmatively and knowingly waived his right to bring a recusal motion.  Certainly the express statement that "Mr. Brooks has no intention of moving to recuse or disqualify the Court" reflected in Greenberg's July 19, 2013 Letter could not be more plain.  Moreover, the context in which that letter was written crystalizes the fact that the defendant was apprised of the threat investigation and his rights to seek recusal.  That is, following the express inquiry from Judge Seybert whether Brooks would be making a recusal motion, Mr. Park and his associate visited the MDC on multiple occasions and ultimately reported back to the Court that the defendant had decided to go forward with sentencing without making the recusal motion.

The defendant now disavows his attorneys' letter, and states that he never waived his right to file a recusal motion. (Exhibit I; Aff. at 3-7.) This assertion is unbelievable for several reasons.

First, it requires the Court to find that back on July 19, 2013, Tai Park, a respected attorney of this bar, made a false representation to this Court that he had discussed these issues "at length" with the defendant and secured his waiver to move for recusal. Significantly, Mr. Park recently submitted a letter indicating that he read Brooks's affidavit and reaffirming that he discussed Brooks's rights and that Brooks waived those rights. (Exhibit G).

Second, Mr. Park's account is corroborated by the visitor logs from the MDC showing that Mr. Park and his associate met with Mr. Brooks on July 18 and July 19, 2013. (Exhibit E).

Third, in an attempt to "challenge Mr. Park's account of the alleged conversation with Mr. Brooks regarding the waiver," Brooks has submitted an affidavit of his civil attorney, Bryan C. Skarlatos, Esq. (Exhibit J). In his affidavit, Skarlatos recounts his visit to the MDC on July 19, 2013 and further corroborates that Mr. Park was present there with Mr. Brooks that day. Skarlatos does not state that he was present for the entire time with Mr. Brooks and Mr. Park and indeed, he concedes that he left Mr. Brooks and Mr. Park alone when his business at the MDC was done. For the most part, the MDC logs confirm this account. We note, however, that the MDC visitor logs reflect that Mr. Park signed in first at the MDC at 9:30 a.m. on July 19, 2013, and that Mr. Skarlatos signed in second, at 10:00 a.m. If both attorneys went directly to see Mr. Brooks, Mr. Skarlatos's memory that he was meeting with Mr. Brooks when Mr. Park arrived may be inaccurate. In any event, Skarlatos's account allows that there was time after he left where Mr. Brooks and Mr. Park were together outside Skarlatos's presence. Notably, Skarlatos is not one of the 35 lawyers who represents Mr. Brooks in his criminal action; that Mr. Park did not discuss the threat investigation and recusal motion in his presence would not be surprising especially given the time that Mr. Park had alone with Mr. Brooks. In any event, the Skarlatos affidavit does not discredit, in any way, Mr. Park's earlier statements regarding the defendant's waiver.

Fourth, tellingly, neither Mr. Shargel, Brooks' lead attorney, Mr. Greenberg, who authored the July 19, 2013 letter, any attorney from the Dershowitz firm, which filed an initial motion to compel discovery related to the threat investigation, nor any other member of the bar of this Court certified the veracity of Mr. Brooks's affidavit as required under Title 28, United States Code, Section 144. That certification was made by David Goldstein, Esq., who was admitted *pro hac vice* to represent Mr. Brooks.

There is simply no reason to question the plain record of waiver in this case. The Court should find that the defendant waived his right to bring the instant recusal motion insofar as it relates to the disclosure of the threat investigation. The Court

can do this on the record supplied herewith, but the government will be prepared to present this evidence at a hearing at the Court's order.

                                    Respectfully Submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney

By:   /s/_____
        Patrick Sean Sinclair
        Christopher Caffrone
        Assistant U.S. Attorneys
        (718) 254-7000
        (631) 715-3000