# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
UNITED STATES OF AMERICA,              :
                                       :   Case No. 06-cr-550 (JS)
          Plaintiff,                 :
                                       :
v.                                     :
                                       :
SANDRA HATFIELD and DAVID H. BROOKS,   :
                                       :
          Defendants.                :
---------------------------------------------------------X

### NOTICE OF MOTION OF DAVID H. BROOKS FOR DISCLOSURE OF INFORMATION REGARDING THE ALLEGED THREAT, ITS INVESTIGATION, AND THE SECURITY MEASURES PUT IN PLACE

**PLEASE TAKE NOTICE** that upon the attached Affirmation of Victoria B. Eiger, dated November 27, 2013 and the Affidavit of Jeffrey Brooks sworn to on November 26, 2013, and upon all prior pleadings and proceedings heretofore filed or had herein, David H. Brooks will move this Court, the Honorable Joanna Seybert, U.S.D.J., Alfonse M. D'Amato Federal Building, 100 Federal Plaza, Central Islip, N.Y. 11722-9014, at a time to be scheduled by the Court, for an Order: requiring the government to disclose when and if the threat investigation was closed and the other information sought in Alan M. Dershowitz's letter of November 14, 2013. Alternatively, or in addition, Brooks requests that the Court place on the record what and when it was advised of the threat, the investigation, and the security measures put in place.

Dated: November 27, 2013

Respectfully submitted,

/s/ _____
*Alan M. Dershowitz*
1575 Massachusetts Avenue
Cambridge, MA 02138
(617) 496-2187
dersh@law.harvard.edu

/s/  *Victoria B. Eiger*
*Victoria B. Eiger*
*Nathan Z. Dershowitz*
Dershowitz, Eiger & Adelson, P.C.
220 Fifth Avenue, Suite 300
New York, NY 10001
(212) 889-4009
veiger@lawdea.com
ndershowitz@lawdea.com

Attorneys for Defendant
  David H. Brooks

TO:   All counsel by ECF
      Clerk of the Court by ECF

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---X

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SANDRA HATFIELD and DAVID H. BROOKS,

      Defendants.

---X

Case No. 06-cr-550 (JS)

AFFIRMATION OF VICTORIA B. EIGER IN SUPPORT OF
BROOKS' MOTION TO COMPEL FURTHER DISCLOSURE

1.    I, VICTORIA B. EIGER, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct.

2.    I am a member of the firm of Dershowitz, Eiger & Adelson, P.C. Together with Alan M. Dershowitz, we will be handling David Brooks' appeal to the Second Circuit. In addition, we have entered appearances in this Court in connection with our preparation and filing of three post-trial motions: the S1/S2 motion (Doc. 1594); the *Skilling* motion (Doc. 1629), and a renewed competency motion (Doc. 1637).

3.    I submit this declaration in support of Brooks' motion seeking further information from the government about the actions of the U.S. Marshals Service and the

FBI in connection with a threat purportedly made by Brooks against United States District Judge Joanna Seybert and others.[1]

4. In addition, or in the alternative, Brooks requests that the District Court place on the record what and when the Court was told about the defendant's purported threats, the investigation of the matter, and any security measures put in place for the protection of the Court or the Court's family.

5. This motion is being made because, for an eight-month period that ended shortly before sentencing, Judge Seybert and the government (but not the defendant or his lawyers) knew that a covert investigation was being conducted concerning an allegation that Brooks had threatened to physically harm Judge Seybert and others. On or about July 17 or 18, 2013 certain defense attorneys, those involved in then upcoming sentencing proceedings, were informed of the investigation. They and the Court were told that the government had found no credible evidence to support the allegation that any threats had been made, and that the government did not credit its source. (*See* Exhibits A, B, C, D, E)[2]

6. However, no defense attorney has been told, nor has the defense been able to ascertain, what Judge Seybert was told about the threat or investigation either when the

---

[1] Although this request is directed to Your Honor, I refer to Your Honor in the third person, as "Judge Seybert" or "the District Court," because it seems to be the least awkward approach.

[2] Exhibit A is Doc. 1687, a letter dated July 18, 2013 from AUSA Patrick Sean Sinclair to defense attorneys Richard Greenberg and Tai H. Park. Exhibit B is Doc. 1688, a letter to the Court dated July 18, 2013 from Mr. Greenberg. Exhibit C is a transcript of a telephonic conference held on July 18, 2013. Exhibit D is Doc. 1690, a letter dated July 18, 2013 from AUSA Sinclair to Mssrs. Greenberg and Park. Exhibit E is a letter dated July 19, 2013 emailed by Mr. Greenberg to the Court.

2

investigation began or as it progressed, what security measures, if any, were put into place to protect Judge Seybert from harm, nor whether the investigation continues.

7. This information is needed so that Brooks and his attorneys will have information, now solely in the government's or the District Court's possession, sufficient to permit Brooks and his counsel to determine whether Brooks should seek Judge Seybert's disqualification under 28 U.S.C. § 144 or 28 U.S.C. § 455 from proceeding further in this matter.

8. By letter dated and filed with the Court on November 14, 2013 from defendant's chief appellate attorney, Alan M. Dershowitz, to the government's lawyers, defendant asked the government to provide the defense with information within its control. Specifically, the letter requested information about *ex parte* communications between agents of the United States and the Court concerning the purported threats and the investigation of them. We asked the government to disclose when and by whom Judge Seybert was first advised of an alleged threat, what Judge Seybert was told, and how the information was conveyed to her. We also sought disclosure of when, what, by whom and by what means Judge Seybert was provided with information about the course of the investigation, any steps that were taken to protect Judge Seybert, and why the prosecutors and Judge Seybert were advised of the threat allegation many months before Mr. Shargel was told about the purported threat against him. (Doc. 1752, attached as Exhibit F)

9. By letter dated November 25, 2013, AUSA Patrick Sean Sinclair answered, but provided virtually no information responsive to Mr. Dershowitz's request. (*See* Exhibit G, Doc. 1763)

3

10. Though the government had previously stated that the United States Attorney's Office ["this Office"] investigated the threat allegations (*see* Doc. 1687, Exhibit A), the November 25, 2013 letter is silent with respect to the U.S. Attorney's *own* investigation and anything it may have communicated, *ex parte*, to the Court.

11. The government is likewise silent as to *what* information was conveyed to Judge Seybert by any other agents of the government. According to the government, "the Marshals were duty-bound to apprise the Judge of the potential threat and take appropriate steps, if and as needed, to protect her and her family." "The Marshals did this." Further, according to the government, the FBI, also duty-bound to investigate the potential threat, "did so, taking a covert investigative approach." (Exhibit G)

12. The government says nothing more about what these agencies did or what information they conveyed to Judge Seybert. AUSA Sinclair's contention to the contrary notwithstanding, his response on behalf of the government does not "avoid needless controversy." (Exhibit G) It foments it.

13. By this motion, defendant Brooks respectfully requests that the government be directed to obtain information responsive to Brooks' inquiries from the Marshals Service and FBI and provide it to the defense. The United States is one entity, and it is represented in this Court by the United States Attorney's Office.

14. The current state of the record leaves fundamental questions unanswered and leaves lacunae in the record that may operate to delay the resolution of this case and which may require a remand from the Court of Appeals to this Court. Simple fairness and judicial economy militate in favor of disclosure now, without any further delay.

15. Alternatively or in addition, we respectfully request that Your Honor place on the record the facts concerning what, when, and how Your Honor was told about the purported threat and the investigation of it by any representative of the government, from the time when the Court was first advised of the threat allegation and at any time after that. Defendant also respectfully requests that the Court place on the record what the Court knew about any security measures put in place to protect the Court or its family. A judge must make disclosure on the record of circumstances that may give rise to a reasonable question about his or her impartiality. *Liljeberg v. Health Services Acquisition Corp.* 486 U.S. 847, 867 (1988) ("by his silence, Judge Collins deprived respondent of a basis for making a timely motion for a new trial and also deprives it of an issue on direct appeal"); *In Re McCartney*, 368 F.3d 1266, 1269-71 (10th Cir. 2004)(noting that there are reasons for not requiring a district judge to be a target of discovery where there were "several avenues" other than discovery for the aggrieved or potentially aggrieved party to obtain pertinent information).

16. This case presents a highly unusual situation. Threats against judges happen with unfortunate regularity, and they are of course very serious matters. In a number of cases, district courts and appeals courts have considered a judge's obligation to recuse himself or herself based on bias or the appearance of bias where there is reason to believe that a defendant has *actually* made a threat against a judge. In most situations, recusal is not required, for the law recognizes that, if a defendant's threat towards a judge required the judge's recusal, a defendant willing to make such a threat would have a opportunity to get rid of a judge he or she did not want.

17. Brooks' case is not the typical threat case, and it presents a highly unusual set of facts. Without his knowledge, his judge was led by the government to believe that he *had* made a threat against her, but, in fact, the defendant had done no such thing. A false accusation – one involving the Court's own safety – was conveyed to the Court by the government without the defendant or his lawyers knowing anything about it. Depending upon the actual facts, this could give rise to actual bias by the judge against him or create the appearance of bias.

18. Under 28 U.S.C. § 455(a), a judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." *United States v. Basciano,* 542 F.3d 950 (2d Cir. 2008). In applying this test, the court asks whether "an objective, disinterested observer, *fully informed of the underlying facts,* would entertain significant doubt that justice would be done absent recusal." *Id.* at 956. "*Depending on the facts,* it might reasonably be argued that a judge who becomes aware of a defendant's credible plot or threat to kill him is likely to be adversely influenced in further rulings in that defendant's case." *Id.* (emphasis added).

19. The present record does not permit a reasoned evaluation of whether that is so. Disclosure of the critical facts is necessary to permit an analysis of whether a motion to disqualify may or must be made, and to insure a record adequate for appellate review.

20. The eight-month period during which defendant was unaware of an alleged threat and an investigation of it was a critical period for Brooks. Though his trial had ended, several substantial motions were made in the District Court by Brooks' team of appellate lawyers: a motion based on the fact that the term of the grand jury that

Case 2:14-mc-00209-ADS   Document 2-7   Filed 02/26/14   Page 10 of 12 PageID #: 40
Case 2:06-cr-00550-JS-AKT   Document 1766-1   Filed 11/27/13   Page 7 of 9 PageID #: 18071

indicted Brooks had already expired when the indictment was returned; a motion challenging Brooks' competency based upon a new report of the government's own psychiatric expert; and a motion challenging the conviction on account of the then-recent *Skilling* decision and its rejection of honest services fraud. These motions, each of which called for both legal determinations and the exercise of judicial discretion, were decided -- all denied -- while the investigation that was kept secret from the defendant and his lawyers took place. (*See* Docs. 1666, 1669, 1670)

21. Depending upon what Judge Seybert was told and what security measures were put into place, Judge Seybert may have had a *sua sponte* obligation to disqualify herself, to disclose the threat allegations to defense counsel, or perhaps, to have put the matter on hold until the investigation was concluded. To be sure, once the government advised Judge Seybert that it had investigated the threat allegation and found no credible evidence to support it, Judge Seybert indicated that she would not be affected by the fact that there had been a threat allegation and investigation. (Exhibit C at page 10) But that says nothing about the effect of the threat allegation and investigation on Judge Seybert before the government informed her, in essence, that the government did not credit the allegation or while security measures for her and her family were, perhaps, in place.

22. If Judge Seybert did have an obligation to disqualify herself after the threat was brought to her attention, there is a presumption that the disqualification would continue. We are aware of no authority for the proposition that the recusal obligation comes and goes.

23. We now find ourselves in an awkward situation. In November 2012, when the threat allegation arose, defendant's counsel – among the most highly respected

7

members of the criminal bar – could have been advised of the allegation, and could have made a considered judgment with respect to how to protect their client's rights. Had counsel persuaded the Court that it should disqualify itself from proceeding further or place the case on hold, the case would not be in the present posture. Consideration of the *defendant's* rights would have occurred. Because no disclosure was made, that opportunity was lost.

24. Defendant's rights are surely deserving of consideration now. While the government revealed in mid-July that it had found no credible evidence that Brooks had made any threat, it has never stated when or if the investigation was closed. The government's letter of November 25, 2013 itself suggests that the investigation continued past July 18, 2013. (*See* Exhibit G) That letter states that that disclosure to the defense occurred in the "later stages" of the investigation, not when the investigation was at an end.

25. The Affidavit of David Brooks' brother, Jeffrey Brooks, sworn to on November 26, 2013, submitted with this motion, provides additional reason to believe that the investigation was not over in mid-July. An FBI agent approached Jeffrey Brooks on July 17, 2013 and told him that if he had any information about the matter, he should come in and tell the FBI. This too suggests that the investigation was open and active.

26. For these reasons, Brooks respectfully requests an order requiring the government to disclose if and when the investigation was closed and the other information sought in Alan M. Dershowitz's letter of November 14, 2013. Alternatively, or in addition, Brooks respectfully requests that the Court place on the record what and when it was advised of the threat, the investigation, and the Court's knowledge of any

security measures put in place. Finally, Brooks respectfully requests that consideration of this motion be expedited.

Dated:   November 27, 2013

/s/ *Victoria B. Eiger*
VICTORIA B. EIGER