**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

               -against-                                    **MEMORANDUM OF**
                                                          **DECISION AND ORDER**
DAVID H. BROOKS,                                            14-MC-209 (ADS)

                                     Defendant.
-------------------------------------------------------------------X

**APPEARANCES:**

**United States Attorney's Office**
*Attorneys for the Government*
610 Federal Plaza
Central Islip, NY 11722
    By:  Bonni Jessica Perlin, AUSA
          Christopher Charles Caffarone, AUSA
          Christopher Allen Ott, AUSA
          James Halleron Knapp, AUSA
          James M. Miskiewicz, AUSA
          Kathleen Anne Nandan, AUSA
          Laura D. Mantell, AUSA
          Marshall L. Miller, AUSA
          Mary M. Dickman, AUSA
          Patrick Sean Sinclair, AUSA
          Richard Thomas Lunger, Jr., AUSA

**Alan M. Dershowitz, Esq.**
*Attorney for the Defendant*
Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02138

**David M. Goldstein PC**
*Attorneys for the Defendant*
286 N.E. 39th Street
Miami, FL 33137
    By:  David Michael Goldstein, Esq., Of Counsel

**Winston & Strawn, LLP**
*Attorneys for the Defendant*
200 Park Avenue
New York, NY 10166-4193
    By:  Gerald L. Shargel, Esq., Of Counsel

**Dershowitz, Eiger & Adelson, PC**
*Attorneys for the Defendant*
220 Fifth Avenue, Suite 300
New York, NY 10001
   By:   Nathan Z. Dershowitz, Esq.
          Victoria B. Eiger, Esq., Of Counsel

**Newman Schwartz & Greenberg**
*Attorneys for the Defendant*
950 Third Avenue
New York, NY 10022
   By:   Richard A. Greenberg, Esq., Of Counsel

**SPATT, District Judge.**

On February 25, 2014, United States District Judge Joanna Seybert referred to this Court the issue of whether the Defendant David H. Brooks (the "Defendant") in the underlying criminal case, Case Number 06-CR-550 (E.D.N.Y.), waived his right to file a motion for recusal of Judge Seybert pursuant to 28 U.S.C. §§ 144, 455(a) and 455(b)(1) and the Due Process Clause of the United States Constitution. For the reasons that follow, the Court finds that the Defendant did waive his right to move for recusal of Judge Seybert based on the investigation into allegations that the Defendant made threats against her and others.

## I. BACKGROUND

The Defendant was indicted in 2007 and charged with multiple counts of conspiracy; securities fraud; mail and wire fraud; insider trading obstruction of justice and making material misstatements to auditors. About three years later, on September 14, 2010, following a jury trial before Judge Seybert, the Defendant was convicted on fourteen counts of the Superseding Indictment. On August 10, 2011, the Defendant pled guilty to two counts of tax evasion and one count of conspiracy to defraud the United States Internal Revenue Service.

The Defendant was not sentenced until August 2013, during a three day proceeding that occurred between August 7, 2013 and August 15, 2013. Judge Seybert sentenced the Defendant to a term of imprisonment of 204 months, to be followed by a term of supervised release of five years. The Defendant was also ordered to pay restitution.

2

Relevant here, prior to the Defendant's sentence, on November 6, 2012, the Government and the Federal Bureau of Investigations (the "FBI") were notified about a potential threat allegedly made by the Defendant against Judge Seybert and against current and former members of both the prosecution team and the defense team. The Government and the FBI notified the United States Marshals Service (the "Marshals") about the possible threat and proceeded to investigate the allegation. In addition, following protocol, the Marshals advised Judge Seybert of the potential threat. However, at the time, the Defendant and his attorneys were not informed of the allegation.

On July 17, 2013, the Government notified some of the Defendant's attorneys about the allegation that the Defendant had possibly made a threat against Judge Seybert and others. The Government also notified them about the Government and FBI's investigation into that allegation, which apparently spanned approximately eight-months and, of which, as indicated above, the Defendant and his counsel were not made aware. Also on July 17, 2013, the Defendant's brother, Jeffrey Brooks, was allegedly approached by an FBI agent outside the Central Islip courthouse and asked to participate in an interview regarding the investigation into the alleged threat made by the Defendant. Further, one of the Defendant's attorneys, Gerald Shargel, Esq. ("Shargel"), was also purportedly notified on July 17, 2013, that he was one of the lawyers that had been allegedly threatened by the Defendant.

On July 18, 2013, the Government filed a letter on the public docket that was addressed to the Defendant's attorneys and which stated the following:

> The government hereby provides notice that between approximately November 6, 2012 and July 2013, the United States Marshals Service (the "Marshals"), Federal Bureau of Investigation ("FBI") and this Office investigated allegations that defendant David Brooks discussed physically harming The Honorable Joanna Seybert, current and former members of the prosecution team and current and former members of the defense team.
> Judge Seybert was made aware of the alleged threat against her as part of the Marshals' standard protocol when law enforcement is made aware of potential threats. The government does not intend to offer any evidence concerning the alleged threat in this matter.

3

(Gov't Exh. A.)

In response to the Government's letter, also on July 18, 2013, the Defendant's attorneys submitted a letter directed to Judge Seybert. The letter noted that although the Government had orally represented to members of the Defendant's defense team that no credible evidence had been uncovered in connection to the allegation that the Defendant made any potential threats, the Government had failed to make any definitive statements in writing. In this regard, the Government apparently believed that its statement in the July 18, 2013 letter that it "[did] not intend to offer any evidence concerning the alleged threat in this matter" was sufficient. Accordingly, the Defendant's counsel sought clarification from the Court.

Judge Seybert immediately arranged a telephone conference call that same day, July 18, 2013, to address the concerns raised in the letter submitted by the Defendant's attorneys. Richard A. Greenberg, Esq. ("Greenberg"); Tai Park, Esq. ("Park"); and Steven Y. Yurowitz, Esq. ("Yurowitz"), participated in the telephone conference call on behalf of the Defendant. However, the Defendant was not present and did not participate in the telephone conference, and his attorneys waived his appearance for the purposes of the proceeding. The Court notes that at other stages of the criminal case, the Defendant waived his appearance in writing, but did not do so for the July 18, 2013 telephone conference.

During the telephone conference, the Government advised Judge Seybert that it would make a supplemental filing on the public docket confirming that any allegation that the Defendant had made potential threats was uncorroborated. Judge Seybert then asked Greenberg and Park the following question: "[S]hould I be expecting any motion to recuse the Court?" (Gov't Exh. C.) In reply, Greenberg stated, "I certainly don't believe so, your honor, now [that] the government has clarified it. I don't see why the Court should be affected by a baseless allegation." (Gov't Exh. C.) Following Greenberg's answer, Judge Seybert confirmed that "the Court has not been affected by the allegations

4

that were made.  So I put that on the record, and unless I hear to the contrary, I will continue preparation on this case for sentence August the seventh [of 2013]." (Gov't Exh. C.)

In addition, with respect to the unsubstantiated allegation that the Defendant had threatened his attorney Shargel, Judge Seybert directed Greenberg and Park to "let me know as soon as you know after speaking to [the Defendant] and Mr. Shargel, whether any motion will be forthcoming so that I can appropriately respond to it." (Gov't Exh. C.)

According to records from the Metropolitan Detention Center ("MDC"), where the Defendant was detained, the Defendant was visited on July 18, 2013 by Eyal Dror, Esq. ("Dror"), who is an associate at Park's law firm, and who was a member of the defense team.  Further, the next day, July 19, 2013, Park visited the Defendant at the MDC.  The Government speculates that when Dror and Park visited the Defendant on July 18, 2013 and July 19, 2013, respectively, they advised the Defendant of the investigation into the allegation that the Defendant had made potential threats and discussed the possibility of filing a recusal motion, which the Defendant ultimately stated that he had no intention of filing.  However, the only evidence before the Court to support the Government's speculation as to what may have been communicated between the Defendant and his attorneys is Greenberg's letter to Judge Seybert, dated July 19, 2013, discussed in further detail below.

In any event, on the same day as the July 18, 2013 telephone conference, the Government filed a letter addressed to Greenberg and Park to advise them that "to date, the government has not identified corroboration of the[ ] allegations [that the defendant threatened physical harm against various people] and does not credit them." (Gov't Exh. D.)   The next day, on July 19, 2013, Greenberg, on behalf of the Defendant, submitted a letter to Judge Seybert by email, stating the following:

> Pursuant to the Court's instruction during the telephonic proceedings yesterday in the above-entitled matter, Tai Park, Esq., met and consulted with [the Defendant] at some length today.  On the basis of Mr. Park's report of his meeting with Mr. Brooks, I can now confirm for the Court the assumption I made and announced yesterday during the proceedings:  Mr. Brooks has no intention of moving to recuse or disqualify the Court on the basis of the government's disclosure yesterday of an unsubstantiated and uncorroborated allegation of a threat

5

> of physical injury the government says it "does not credit." Thank you
> for your consideration in this matter.

(Gov't Exh. F.) However, inexplicably, this letter does not appear to have been filed on the public docket.

According to the Defendant, he did not receive a copy of the transcript of the July 18, 2013 telephone conference until October of 2013. The Defendant also apparently did not receive a copy of Greenberg's July 19, 2013 letter until October of 2013. The Defendant claims that at the time, in July of 2013, he was not fully informed about the recusal issue nor given full disclosure. In addition, to date, neither the Defendant nor his attorneys have ever received the materials connected to the eight-month investigation into the allegation that the Defendant made potential threats.

As stated above, the Defendant was sentenced in August of 2013. Two months later, in October of 2013, the Defendant's present counsel became aware of the potential recusal issue. They claim to not have been made aware of the issue prior to October of 2013, despite the fact that both of the Government's July 18, 2013 letters pertaining to this issue appear on the docket. Nevertheless, allegedly, the Defendant's current attorneys did not receive notifications when these letters by the Government were filed due to a technical glitch in the Electronic Case Filing System.

Eventually, the Defendant filed a motion to compel the Government to produce materials related to the threat investigation, as well as a motion to recuse Judge Seybert. With respect to the latter motion, on February 25, 2014, Judge Seybert signed a Referral Order, which referred to this Court the following issue:

> Brooks' motion to recuse the Undersigned is hereby REFERRED to
> District Judge Arthur D. Spatt for DECISION only with respect to the
> issue of whether Brooks waived his rights to file a motion for recusal of
> the Undersigned pursuant to 28 U.S.C. §§ 144, 455(a), 445(b)(1) and the
> Due Process Clause of the United States Constitution. The Undersigned
> will decide the remaining issues related to Brooks' recusal motion in due
> course.

United States v. Brooks, 14-MC-209 (ADS), Dkt. No. 1. So that this narrow issue is the only one before this Court.

6

## II. DISCUSSION

### A. Legal Standard

The law requires that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In this regard, "a judge must recuse himself under 28 U.S.C. § 455(a)" if "'a reasonable person, knowing all of the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned.'" United States v. Barreras, 494 F. App'x 115, 118 (2d Cir. 2012) (quoting United States v. Bayless, 201 F.3d 116, 126 (2d Cir. 2000)) (brackets in original). Generally,

> recusal motions are committed to the discretion of the judge who is being asked to disqualify himself, who is enjoined to "weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Litigants are entitled to an unbiased judge, not to a judge of their choosing."

United States v. Anson, 04-CR-6180 CJS, 2007 WL 119151, at *6 (W.D.N.Y. Jan. 10, 2007) (quoting In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir. 1988), cert. denied sub nom. Milken v. S.E.C., 490 U.S. 1102, 109 S. Ct. 2458, 104 L. Ed. 2d 1012 (1989)).

When circumstances giving rise to grounds for disqualification under 28 U.S.C. § 455(a) are present, a party's "waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). In addition, a recusal motion brought pursuant to 28 U.S.C. § 455(a) must be "timely" in that "one seeking disqualification must do so 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim' of disqualification." Anson, 2007 WL 119151, at *7 (quoting Gil Enters., Inc. v. Delvy, 79 F.3d 241, 247 (2d Cir. 1996). "Untimeliness," defined by the Second Circuit as "a failure to seek recusal when it should first have been sought, . . . can sometimes constitute the basis for finding an implied waiver." Bayless, 201 F.3d at 127.

7

"It bears noting . . . that a defendant can waive certain rights through the actions of his attorneys, even if the defendant himself was unaware of the circumstances and actions giving rise to the waiver." United States v. Daugerdas, 867 F. Supp. 2d 445, 476–77 (S.D.N.Y. 2012) (citing Gonzalez v. United States, 553 U.S. 242, 248, 128 S. Ct. 1765, 170 L. Ed. 2d 616 (2008) ("As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.")). In this regard, "courts[ ] disfavor [ ] litigants who fail to act on information in their possession only to claim later that such information resulted in a violation of their rights." Id. at 477–78 (collecting cases).

## B. As to Whether the Defendant Waived His Rights to File a Motion for Recusal

The only issue before the Court is whether the Defendant waived his rights to file a motion for recusal. In reviewing this issue, the Court is presented with a case where the Defendant's attorneys expressly represented both on the record and in a later filing with the Court that the Defendant would not be pursuing a motion to disqualify Judge Seybert. Given these facts, the Court concludes that the Defendant did in fact waive his right to file a motion for recusal based on the investigation into the alleged threats made by the Defendant.

Many courts have upheld a waiver by an attorney of his client's right to move for recusal. For example, in the recent decision in United States v. Brunsman, 1:11-CR-014, 2014 WL 309001 (S.D. Ohio Jan. 27, 2014), the court held that "[t]he asserted disqualification under 28 U.S.C. § 455(a) is waivable after full disclosure of the facts and [the] [d]efendant's position that such a waiver must be made by the client and cannot be made by counsel is not supported by authority. And there is no question that Defendant's counsel . . . entered such a waiver on the record." Id. at *1.

Similarly, in another recent case, United States v. Mix, CRIM. 12-171, 2014 WL 580758 (E.D. La. Feb. 13, 2014), the Court upheld a criminal defendant's § 455(e) waiver, which had been made by his counsel. In Mix, the defendant was a former drilling engineer for BP, PLC ("BP") who had been

8

convicted of destroying electronic text messages that "allegedly concerned the flow rates estimated at the time of a failed effort to contain the flow of oil from the Macondo well into the Gulf of Mexico as a result of the Deepwater Horizon drilling rig explosion." Id. at *1. The defendant brought a motion for recusal upon learning the judge assigned to the case, United States District Judge Stanwood R. Duval Jr., had joined a civil action against BP related to damage caused to his Grand Isle beach house property by the oil spill.

However, prior to the defendant bringing his motion, Judge Duval had held a telephone conference with the parties during which he informed them that (1) his beach house had allegedly suffered damage due to the oil spill; (2) although he had not yet, he could make a claim with the BP claim process; and (3) "he had neither a direct interest in the subject matter of this criminal proceeding, nor did he believe that his impartiality with respect to the defendant might be reasonably questioned as prohibited by 28 U.S.C. § 455(a)." Id. at *7. In response to this disclosure by Judge Duval, one of the attorneys for the defendant advised that he did not believe any of the abovementioned facts required Judge Duval's recusal. Further, after being granted an additional week to further investigate the Judge Duval's disclosures, the defendant's counsel submitted a letter on behalf of their client, which stated "Mr. Mix hereby waives those potential grounds and has no objection to Judge Duval continuing to preside over this matter." Id. at *8.

Accordingly, in denying the defendant's motion for recusal, the Mix court excplained:

> Counsel for Mr. Mix stated unequivocally during the conference that based on the facts disclosed by the Undersigned, none of those facts involved the allegations in the indictment against Mr. Mix and counsel indicated that he did not find any of the disclosures presented by the Court to require a recusal. Then, counsel for Mr. Mix had one solid week to research and analyze the disqualification issue. The Court reiterates that the two law firms which fielded at least three lawyers who represented Mr. Mix and participated in this conference had sufficient to examine the record in the [civil oil-spill lawsuit against BP that Judge Duval eventually joined]. Counsel for Mr. Mix are not an uneducated, uninformed pro se plaintiffs; counsel knew or should have known that the alleged "willful and reckless misdeeds" of BP would be implicated in pursuing any claim that the Undersigned might make for damages to his property in Grand Isle. Nonetheless, Joan McPhee [one of the

9

> defendant's lawyers] sent a signed letter to the Clerk of Court for the Eastern District of Louisiana that stated that based on the "possible grounds for disqualification disclosed by the Court. Mr. Mix hereby waives those potential grounds and has no objection to Judge Duval continuing to preside over this matter." These facts unequivocally demonstrate that there was a full disclosure on the record of the basis for disqualification and Joan McPhee on behalf of her client Kurt Mix waived these alleged grounds for disqualification.

Id. at *10 (citation omitted).

The Court is persuaded by the reasoning found in the Brunsman and Mix decisions. Here, the defendant was represented by a team of attorneys who received full disclosure as to the fact that the defendant had been investigated for allegedly making threats against Judge Seybert and others and that those claims had not been corroborated by any evidence. Although the Defendant now argues that he and his attorneys never received full disclosure because the Government has not provided them with further details about the investigation, the Court, having reviewed the record, is satisfied that the information made available to the Defendant's lawyers during the telephone conference was sufficient to constitute full disclosure.

The letter filed by the Government prior to the telephone conference alerted counsel for the Defendant that from November of 2012 to July of 2013, there had been an investigation conducted by the Marshals, the FBI and the Government into allegations that the Defendant had threatened Judge Seybert and others. At the telephone conference, the parties discussed this letter and that the allegations were unsubstantiated. Moreover, on the record, Judge Seybert clearly advised that the "the Court has not been affected by the allegations that were made." (Gov't Exh. C.) In this context, the attorneys for the Defendant explicitly waived the Defendant's right to move for recusal first on the record and then in a letter filed with the Court. Indeed, the letter unequivocally stated that "Mr. Brooks has no intention of moving to recuse or disqualify the Court on the basis of the government's disclosure yesterday of an unsubstantiated and uncorroborated allegation of a threat of physical injury the government says it 'does not credit.'" (Gov't Exh. F.) Therefore, in the Court's view, the

Defendant's counsel, on behalf of their client, waived the threat investigation as a potential grounds for disqualification Judge Seybert in the underlying criminal matter.

The Court notes that "[m]ore than one court has recognized the sensible principle that 'a defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge.'" United States v. Barrett, 111 F.3d 947, 951 (D.C. Cir. 1997) (quoting United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990)) (internal bracket omitted). This principle is particularly applicable here, where the Defendant, through his attorneys, (1) was clearly made aware of a possible ground for disqualification of Judge Seybert; (2) expressly waived his right to move for recusal on those grounds and decided to proceed with the sentencing; and (3) three months after sentencing, asks the court revisit the same grounds that had been expressly waived.

In conclusion, the Court finds that the Defendant waived his right to move for Judge Seybert's recusal based on the investigation into the allegations that the Defendant made threats against Judge Seybert and others.

### III. CONCLUSION

For the foregoing, it is hereby

**ORDERED**, that pursuant to 28 U.S.C. §§ 455(a) and 455(e), the Defendant, through his counsel, waived his right to move for Judge Seybert's recusal based on the investigation into the unproven allegations that the Defendant made threats against Judge Seybert and others.

**SO ORDERED.**

Dated: Central Islip, New York
June 19, 2014

                                                  ____/s/ Arthur D. Spatt_____
                                                      ARTHUR D. SPATT
                                                United States District Judge